Date: Dec 8, 2015

No. W 10-71278 K(A)
WR-84,229-01

Ex parte
Gary Don Jennings

~~In the
Criminal District
Court No. 4
Dallas County, Texas~~

Court of Criminal Appeals
of Austin, Texas

### REBUTTAL
Of States' Response to
Applicant's **11.07 Writ**

To the Honorable Judge of said court. comes now Gary Don Jennings, pro se, to present this "rebuttal" of the Honorable District Attorney, Susan Hawk's **state's response to Application for Writ of Habeas Corpus**. Do wish to impress upon the Court, the fact that Petitioner is a laymen of the law, without any acclaim certification, and therefore, ask that the Court accept his rebuttal and thus construe it liberally.

The Petition being without legal Counsel or assistance ask that the Court provide such legal Counsel to assist in the proper manner to proceed in pursuant to exhausting his constitutionally protected 'liberty interest rights'.

Furthermore, the Petitioner hereby request that the Honorable Court forward him the conclusive **'Statment of Facts'** upon the Court's disposal of the Petitioner's herein rebuttal.

Gary Don Jennings
Rebuttal to State's response
Sanders Estes Unit 1100 Hwy 1807
Venus, Tx 7668

Respectfully Submitted, Dec, 8, 2015
1836900

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 16 2015

Abel Acosta. Clerk

Gary Don Jennings

In The Criminal District
Court No#4 of Dallas County, Tx

## REBUTTAL
### OF
### STATE"S RESPONSE TO
### APPLICANTS' Writ of Habeas Corpus

In accordance with PLRA requirements - insofar as having exhausted necessary legal remedies, in hope to resolve such constitutional and state legislative violations via "Appeal" of the Texas Board of Pardons and Paroles' decision to "deny" release to Mandatory Supervision - which proven futile. Wherefore, Petitioner herewith, present a "rebuttal" to the State's Response to Applicants' 11.07 writ for Habeas Corpus relief. In pursuant to 28 U.S.C.2254 Federal Habeas Corpus relief; such venue made available as in Preiser v. Rodriguez, 411 U.S.C. 475, 500, 933. Ct 1827; which addresses the Fact or duration" of an individuals' imprisonment.

'State or Federal habeas corpus relief cannot be granted unless the Petitioner alleges he has been deprived of some right secured to him by the United States Constitution - or upon basis established by records of State legislature'.

The herein case involves the extent to which the Honorable Trial Court/Appellate Court may judicially review the Texas Board of Pardons and Paroles's "amended" Sept 1, 1996 74 legigislative House Bill 1433 that governs the "Discretionary Mandatory Supervision" (DMS) rule and process. upon such basis, the Petitioners' 11.07 writ claim -Constitu - tional protected liberty interest rigths entails three grounds:
1) due process violation; 2) Ex post Facto; and , 3) Cruel unusual punishment; from which the Petitioner seek relief.

# PROCEDURAL DEFAULT

In most instances for the expressed purpose of eliminating discrepancies, contradictions and/or inconsistencies, the **bulk of** case law is quite redundant; and further, as strict measures against misunderstandind, **ambiguity**, or to curtail the complexity of appeal, a method of **reptitious** case citing is employed. Whereas, the Petitioner, for the sake of brevity - strains to avoild burdening the Honorable court with such excessive legal jargon' or the brute monotony of case law citings - wherever feasible. Trusting, however, that a **copy** of the Petitioners' **11.07 writ** and attached 19 page Memorandum of law is at the Courts immediate disposal to peruse and contemplate, and thus, facilitate its decision to reach a modest conclusion.

> ."Court must be especially careful when faced with motion/decision to **dismiss** for the lack of subject matter jurisdiction - and should accord plaintiffs' complaint a reasonable tolerance and reading - because dismissal **could** preclude another **suit** based on any theory that plaintiff might have advanced on basis of facts giving rise to the first action.." Fed Rule Civ. Pro. Rule 126(6) 28 U.S.C.A.

If it pleases the Honorable court, permit the Petitioner to express his resilient dissatisfied sentiments, however, nothing personal in the neighborhood of casting doubt on the integrity, competence, or morals of the Honorable District Attorney, Susan Hawk - whose decapitated method of decorum and convoluted reasoning exemplified along her 'States' Response to Applicants' 11.07 writ, was a defense, conducted upon the gallows of prevaricated buffoonery; assailing the Hall of Justice from a catapult of fling doctrine formulated on the basis of judicial rhetorical evasions. Such response entail sheer conclusory statements unsupported by factual arguments. One would have to be **furious or** either delirious to have deemed the Petitioners' grounds of **"Plain error"** 11.07 complaints as frivolous and of no merits; and thus, subjected to **dismiss**; You can't be serious!

> ..."Plain error" is clear or obvious that trial judge and procecutors were **derelict** in countenancing it, even absent the defendants timely assistance in detecting it.." Fed Rules Civ. Proc. Sl.(b),18 U.S.C.A.

An inmate confined in the Texas prison system is entitled to expect that the judiciary committee: the District Clerk, the Prosecuting Attorney (DA), and the Justice of the Peace - will be expert and impartial in their approach to statutory mandates. The proper objective of "rules" of civil procedure is to obtain a just, **fair**, equal and impatial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the State as may be practicible, these **rules** shall be given a **liberal** construction.

The presiding judge in such challenging disputant cases between a litigant and the State, has been known to uphold a special institutional virtue as a neutral referee; wherefore a modicum of fair - play can be ascertained; an **umpire**, able to read law impartially, to consider the factual evidence as relevant between both, the common peasant and equally the elite. When the rights of the defendant are disregarded in the slightest degree in obtaining relief; or either an accused worng-doer is afflicted with the abuse of officials, the courts will hasten to grant relief in favor of the accused.

The courts relies upon legislature to act within their proper powers or constitutional jurisdiction to enact measures for the good, rather than to manipulate and monopolize statutory directives to the disadvantage of the incarcerated offenders. If someone stake a claim to a right against an official as notorious as the Parole Board, it ought to be incurred the same type of genre of respect entitled any other litigants. In short, any show of **abuse or cruelty** on the part of a few in power seems to **discredit** the authority of the entire government infrastructure. In too many cases administrative officials are **guilty** of arrogance, negligence, or extreme **bias** - which in the most part, were the very antics that prompted the origins of the current challenge with the Parole Board; no doubt.

..."The substantive component of the Fifth Amendment **Due Process** clause **bars** certain offensive government actions regardless of the procedures used to implement them.." U.S.C.A. Const. 5.

..."Inmates' claim against members of the Texas Board of Parole, which called into question fact and **duration** of his confinement, should have been brought as a **habeas corpus** claim, rather than as a Section 1983 civil rights action.." see Thomas v. Torres 117 F2 248.

To the contrary, with quite a deal of modesty and **truth**; however resolute, with courtroom decorum, the Petitioner herein shall endeavor to **refute** the superficiality of the DAs' charading **ballerina** of carnaging facts - whose portrayal is thus illustrated in such **bellicose** act as to have **denied** the Petitioners' **due process** claim on an abstract practicality; and literally **dismissed** his **ex post facto** claim with an attack of procedural jurisdiction technicality - followed by the Petitioners' third claim of "**cruel and unusual punishment**" being thus, denied as an extract.

## STATEMENT OF CASE

The Petitioner is currently serving time for **two** sentences that runs in **separate** "jurisdictions" - a 30 year UUMV conviction #F89-74322SN, and the 10 year burglary of the instant case #F10-71278K - applicable to the 11.07 writ in process; and whose minium expiration date was 5/8/2015; towards whom a **30 day** advanced "timely" notice - issued - 4/16/2015 *(Exhibit "C")* was **not** provided. Although the Petitioners' 30 year, 1989 sentence "**governs**" his 77th legislative House Bill 1649 - "**automatically**" release to Mandatory Supervision date 8/8/2015, since its the longest of the two sentences which he must serve. *see Exhibit "B" (1989-30 year Time Sheet)*

The crucial and logical **question** to ask; "**why is the Petitioner still held imprisoned?**"

In retrospect, since the inception of the Petitioners' TDCJ imprisonment: the **forfeiture** of his ten-years of street-time credit was challenged, and later restored; which proceeded a **withdrawal** of a "parole denial" - a Set-Off; replaced with a "Serve-All" up until the 8/8/2015, the Petitioner's **automatic** release to Mandatory Supervision; only to be unceremoniously **snatched away** by the impropriety of the "Sept 1, 1996 revised HB1433 "**Discretinbry Mandatory Supervision**" rule.

In accordance to - U.S.C.A. Amend 14:

> ..."The **due process** goal in any parole review is to
> **minimize** the risk of error in their decision making. The
> quantum and quality of due process in a particular situ-
> ation depends upon the **need** of the Parole panel to mini-
> mize the risk of such **errors**."

Unfortunately, as herein the incriminating facts shown that this has **not** been the objective of TDCJ/Parole in the Petitioners' case.

Petitioner asserts that "Discretionary Mandatory Supervision" **language** in the 74th legislature House Bill 1433, creates a **liberty interest** release on parole if an inmate's accrued good conduct time is an **accurate** relflection of the inmate's potential for rehabili- tation; and that his release would **not** endanger the public'.**Yet**, the Petitions' 100% accrued good conduct time an astute participant and completion of the TDCJ **ITP** prison program requirement; registered as a TDCJ **"Peer Educator"**/tutor - an accurate **reflection** of his ongoing "rehabilitation"; void of the slightest disciplinary case; by far from posing that of a "threat" to socety - Nonetheless, **denied** release to the Petitioner's statutorily **Mandated** automatic Mandatory Supervision prison discharged date.

A most crucial point to keep bored in mind is the prevailing fact:

> ...When an inmate enjoys a constitutiinal **expectancy** to an early release
> from prison based on the accumulation of good-time credits, and the actual
> calender time served = equals the **term** to which the inmate was sentence,
> thus, he has a protected **liberty interest** and is entitled to **due process**
> of law before he may be **deprived** or otherwise ( **connived**) out of such
> entitlement."   see Wolf, 418 U.S. at 557, 945, Ct. 2963.

Similar as incase citing of Orellana v. Kyle, 65 3d 29:'the Petitioner is seeking to have the Parole Board **comply** with due process of law procedures (as well as to **ex post facto** requirements) in its parole review process. The Petitioner has been **denied** due process of law because he was **not** given an advanced **"timely"** 30 day notice that's applicable to his 2013 10 year sentence that's under the Sept 1, 1996 74[th]legislative HB 1433 statute. "An inmate is entitled to a 30 day advance **"timely"** notice' as specified in **Ex parte Retzlaff,**135 S.W.3d 45,50(Tex, Crim. App. 2004). Traditionally, procedural **due process** protects an indivîdulas rights to be heard at a meaningful time and in a meaningful manner'. U.S.C.A Const. 5.

The District Attorney, Susan Hawk, herself, concede with the premise of the "due process clause":.."Unlike Parole, Texas Mandatory Supervision statute creates a **liberty interest** in release that is protected by the Due Process Clause; see Ex parte Geiken, 28 S.W. 3d 553; While a live hearing is **not** required to satisfy due process, an inmate is **entitled** to a meaningful opportunity to be heard before the Parole Board makes its decision concerning the inmate's release". see Ex parte Shook, 59 S.W. 3d 174, 175. An inmate is entitled to **notice** of a **30 day** advanced "timely" period sufficent enough time to submit materials on his behalf." Ex parte Retzlaff.

**Yet**, the District Attorney, Susan Hawk is moved to put her own **charlatan spin** along the lines of the "statutorily" above **quotes:**

> ..."The 'Discretionary Mandatory Supervision' notice - clearly states that Mandatory review hearing would take place within 60 days prior to your projected release date.."

**Affirmatively**, the Petitioner concedes.

**Yet**, the District Attorny's second "quote" of the DMS notice is mere conjecture that proceeds assertions uttered out of administrative chauvinism:

> ..."The DMS notice made it clear to the Applicant that the review of his Mandatory release in this instance case would take place no sooner than June 8, 2015, and was actually heard on June 25, 2015.."

Blatantly **negative!** the futility of the second above "quote" is **nowhere** to be found on the DMS notice, nor does it alludes to the precision of such dates - which is to strongly insinuate an act of camaradrie **cohort** with the Board of Paroles (which also explains why the Applicants' 11.07 writ had been returned Oct 8, 2015 - thirty days after mailing it to Dallas County Clerk of conviction - **yet**, such writ wounds up in the hands of the **Austin, Tx** Court of Criminal Appeals clerk, **Abel Acosta;** who mysteriously forward the Applicants' 11.07 writ back to him **"unprocessed"**).

During the chivalrous **melee** of the District Attorneys' "quotes", the **pangs** was taken to **omit** the main centural line of the DMS notice:

> ..."Records indicate you have a conviction with an offense **date after 08/31/1996.."**

**Hence**, what other motive, if I might add, would an upholder of "justice" evade the **ultimatum of** the DMS primary notice - but yet, astutely select quote verbatim- that does not promote the interior of the "due process" violation **being herein** contested; while the **"Plain error"** of the DMS notice is clearly totally **defective.**

(6-of-33)

Similar it is found in Ex parte Ervin, 187 S.W.3d 386:

> ..."Defendant filed a state habeas corpus petition in which he argued
> that the Parole Board did **incorrectly** apply Tex Gov. 508.149 to his
> case, rather than the earlier applicable sentencing statute; consq-
> uently, the State ruled defendant claim **cognizable** in a post-conv-
> iction habeas application; and the Board of Paroles **must comply**."

The Petitioner hereby implores that the Honorable court **peruse**
the enclosed DMS notice; **exhibit__** - as its' inference clearly
states: ..."Records indicate you have a conviction with an offense
date **after 08/31/1996.**"

Hence, designating the Petitioners' 2013 10year burglar sentence;
whose minimum expiration MS date is 5/8/2015; despite of the fact
that such DMS notice arrived on **4/16/2015** - in stark **due process** error;
subsequently, such DMS notice is also satuated with an **Ex Post Facto**
violation; seeing how its' **retroactivly** applied to the minimum expiration
date 8/8/2015 - annexex to the Petitioners' 1989 30year Conviction;
Subsequently, by the sheer "date" of the DMS Notice post-script - thus gives said court full jurisdiction.

The **crux** of this whole panorama can all boil down to - as it is
acknowledged in the DA, Susan Hawk's state response to Applicants'
11.07 writ:  .."Applicants' 1989 UUMV 30 year sentence **govern** his release
eligibility as it is the longer of the two sentences which he must serve."

Yet, the pervading **irony** that **stigmatize** the above postulate,
is none other than the fact that the Petitioner is **prohibited by law**
from even remotely drawing inference to the fact that such was the
**unlawful** act of the Parole Board. As a matter of "jurisdiction",
by all means, procedurally such an issue must resort to an entierly
separate 11.07 writ of habeas corpus being thus ensued. **Yet**, while
the "Justice of the Peace" ( the **DA** ) referee it as a **foul** on my part;
the Parole Board **exults** tauntingly over their own mischief.

> ..."Where individual **liberty interest** is implicated, the Due Process
> clause requires that an excutive agency adhere to the standards by
> which it professes its action to be judges." Bonitto v. Bureu of Immg.

The Petitioner herein **contest**   the acts of the Parole Boards ' manip-
ulating and monopolizing the DMS HB1433; creating a retroactive **dichotomy**, thus,
arbitrarily extracting from my 1989 sentence - to be superimposed by rules of my 2013 case.

**Due Process cont:**

The case citing of, Brown v. Estell at 712 F.2d 1003; which is quite analogous with the previous case in Bonitto v. Bureu of Immg; however, reminiscent of the Petitioner's herein challenge:

> ..."Petitioner's claim that, by **improperly** assigning him Mandatory prison term under inapplicable statute, state improperly **deprived** him of his **liberty interest** in proper exercise of sentencing authority's discretion, although primarily implicating questions of **state law**, was cognizable in federal habeas corpus."

In light of such analogous **case law** citings, unlike the ruthless cynicism by which the opponent contrives, the Petitioner **trust** that the Honorable court will **sumise** the ongoing "due process"disposition, as to which side coincide more or less as a component of **stare decisis** or that of an exponent that has sat a precedence in an affair of **crisis**. The Petitioner petulantly **rebuke** the 'prosecutorial' **convoluting** quotes with half-truths.- as a ploy to mitigate the 'due process' errors that the Parole Board has made at the behest to keep the Petition's freedom **deprived** beyond its' statutorily mandated days; however, the "**Plain error**" estate reflects herein like a mirror and need **not** be scrutinized.

The following response from the DA is so obnoxious, it's obvious that task of "due diligence" relative to the documented **exhibits** submitted by the Petitioner *had not been ensued-* as substantial evidence:.."Thus, even if this Court were to find a 'Due Process' violation there's **no** evidence to support it." **My ole my!** the proof is in the pudding. The due process violation is preponderantly established; the **exhibits** clearly suffice. However, the relevance of the "due process" is not relative to such instances of some procedural scheme that may warrant it, *no more than "A live hearing is not required to satisfy due process."*

Hence, irregardless as to whether an inmate failed to "**complain**", or even didn't seize upon the opportunity to submit documents to the Parole Board, as alluded to in the DAs' argument; thus doesn't preclude an inmate's entitlement to "due process of law".

## Due Process  Cont:

The laws and policies regulating the Sept 1, 1996 74th legislative "Discretionary Mandatory Supervision" House Bill 1433, can appear qiute complicated indeed, and the language rather ambiguous; however, as alluded to earlier, the Petitioner hereby strain to avoid much **redundacy**.

We also find in Lynce v. Mathis, at 117 S.Ct 891:

...·"The Court of Criminal Appeals **ordered** the Board of Paroles to provide a 30 **day** timely notice - and held that States' **amended** or revised statute to the computation of the offenders' parole eligibility on the **prior** sentence(such as my 1989 30yr. sen.) does constitute a violation of (both, due process) ex post facto clause."

Lets not **flip** the script here; it was not the Petitioner whose the **culprit**. Its none other than the Parole Board themselves - however inanely the DA has herein shown to go over-board in defense of such **"Plain error"**. The misleading point being argued by the DA is an assumption - that by the Applicant having failed to submit any form of document to the Board of Parole, thus, he **forfeited** his statutory entitlement to be the recipient of the 30 **day** advanced timely DMS **notice**; however **absurd!** While in fact, on April 23, 2015, the Petitioner did "submit" a letter, titled: **'Parole Deposition'**, in complaint about the erroneous application of the DMS notice; yet, **to** no avail.

How **obtuse..:** "had the Applicant absorbed the available remedy of such due proces violation it would be remanded to the Parole Board so the Applicant may provide materials on his behalf for consideration at the next eligibility."

**Granted**, yet, such ideology and proposition concerning the Parole Board is not at all transparent; giving the **notorious** disposition that the Parole Board is known to neglect its respondent; what the DA is endorsing is **a mute point.** Moreover, on July 15, 2015, a week after receiving a DMS (Denied Mandatory Supervision), a total of **5 letters** were addressed to several of the Texas Parole Board regions to **request** an 'Appeal' of such denial; **yet**, nearly five months later; NOTHING!

**Due process -** The conduct of legal proceedings according to established **rules** and principles for the **protection** and enforcement of an individuals rights.

**Absudity of abuse -** is the reliance on arbitrary whim and the act of **caprice** to achieve those of "due process" ends.

**Due process - Conclusion:**

The Petitioner humly relent, and wholly apologize to the Honorable court for the extent of a "due process" defense being at such length. Perhaps the following "two" claims, as a result, has soemwhat tame the atmosphere and assuage the indepthness of the aim to present a short phase; at any rate, let it be upon the stage of such contending woes, against the backdrop of the herein opposing odds - that the Petitioner's due process rights has been highway-robbed by the Board of Paroles having reneged on its administrative law-abiding job: "failure to comply with State legislature statute to provide a 30 day advance timely DMS notice;" and thus grant the relief he seeks.

Lets not get it twisted; The 74th Legislature HB 1433 of the DMS rule explicitly states: .."the change in law made by this Act applies only to inmates serving a sentence for an offense committed after Sept 1, 1996 of this Act."

Hence, since the Petioner's 2013-10year burglary sentence is in fact governed by this HB1433; 'why wasn't a timely 30 day notice issued prior - to 5/8/2015 the miniumu expiration MS date? As opposed to having arrived and signed on 4/16/2015; erroneously being thusly applied to the Petitioner's 1989-30 year UUMV sentence; for which the embarkment upon of such "retroactive" influx brings us to the Ex Post Facto claim. Hence, just because the Parole Board erred in unlawfully applying the DMS Notice, doesn't necessatate the State's attempt to exempt it's every facet from being with said court's jurisdiction.

**EX POST FACTO VIOLATION:**

Ex post fact clause applies to statutory or polocy change that alters detention of criminal conduct or penalty by which a crime is punishable; new law or policy violates Clause when it is retro - active, i.e, applied to events occurring before its enactment. It entails the putting an offender at a greater disadvantage than the situation warranted previously.

Penal Code governs range of punishment; whereas, Criminal Code of Procedure ensures that punishment is carried out properly.

## EX POST FACTO

The Petitioner, admittingly, pursuing such challenge against the Board of Pardons and Paroles, quite a formidable entity; as an **amateur** without the remoteness of legal assistance; and whose knowledge of the rudiments of **"jurisdiction"** prohibition is rather **skimpy**; however, hereby implore the Honorable court to **deem** the herein **"rebuttal"** liberally. For the District Attorney, Susan Hawk made its **constraints** to note:

..."Applicant is procedurally precluded from raising issues pertaining to a previous current conviction #F89-74322."

The District Attorney, out of an act of **"omission"**, alludes to the fact that the Petitioners' ex post facto rights has indeed been violated by the Board of Pardons and Paroles - **via** - incorrectly applying the **amended** Sept 1, **1996 DMS** statute **"retroactively"** to his 1989 30 year sentence; thus, the Parole Board **erred** by denying him its' statutory **"automatic"** release upon its Mandated "Mandatory Supervision" date: **8/8/2015**. A blatant "ex post facto" violation; thus subjecting the Petitioner to a **prolonger** imprisonment; certainly placing him at a grave disadvantage - **via** of being **deprived** - day-by-day his **"freedom"**, that would have otherwise transpired had the Parole Board simply **complied** to its statutory mandates.

.."Ex post facto is criminal or penal measure which is retroactive and is disadvantageous to offenders because it may impose greater punishment". U.S.v. Leonard, 868 F.2d 1393.

,,,"Statutes enacted or **amended** after prisoner was sentenced **cannot** be applied to alter condition of his **pre-existing** parole eligibility -
(an interceding NOTE - a concurring clause is thus interjected......

Cont: .."notwithstanding that conduct purportedly triggering Application of statute occurred after its enactment. U.S.C.A.Const.

Hence, at this incredible junction, the Petitioner shall present substattial **evidence** -stemming from the **above** statute that **contest** the DA Susan Hawk's argument:

.."Applicants' specific grievances in his second ground for relief (ex post facto) arise out of cause no #F89-74322(1989 30 rear case)."

**WRONG ANSWER!**...Each of the Petitioner's **three** "grounds" derives from the "same" source - the DMS **notice** which specifically states its **"reference to a conviction committed after Sept 1996."** Hence, explicitly **attached** to the rudiments of his 2013 10 year conviction in which the said Court has full **"jurisdiction"** thereof. The DMS notice is **"precluded"** from such constituents of the Petitioner's 1989 court of **"jurisdiction"**; However may the conduct purportedly triggered an "ex post facto" violation, the "jurisdiction" withstand upon the authority that resides in the 2013 10 year court case -annexed to the DMS.

(11 of 33)

# EX POST FACTO RAMIFICATION

The **judicial branch** palys a complex role in the **"system"** of law and order. **Judges** apply the language of the constitution and statutes to specific court cases which often involve circumstances that could not have otherwise been foreseen when such laws or conclusive arguments were made, however, then enacted as **"statute"**. These judicial interpretations can either be of a **conflictual** nature - or that of a significant importance than even what the original text (Const.) provisions they **interpret**ed.

Real life issues does not always **divide** neatly between right or wrong, truth vs. false; whereas, a matter of caution is not to **pigeonhole** an issue too narrowly. It may be assume that a **District Attorney** is obligated to follow the law. But even then it is not the most natural or ordinary construction of the law - and certainly not the construction that such administrators as the Parole Board might ensue to put their **spin** on a policy that the legislature has enacted into law - that a state prosecuting Attorney (DA) would stroll along and feel oblige to uphold at the terrible expense of struggling litigants.

It is the duty of state legislature to make laws, and the function of judiciary to **"interpret"** those laws. When court interprets statute, it seeks to effectuate collective **intent** or purpose of legislatures who enacted legislation; consequently, the court focuses on **text** of statute and interprets it in literal manner - attempting to discern **fair** objective meaning of the text as a whole.

Take the enactment of the revised **"amended"** Sept 1, 1996 74th legislative House Bill **1433**, that governs' the **"Discretionary Mandatory Supervision"** statute. Its' **ordinance** states':

..'The changes in law made by this act **only** applies to prisoners serving sentences commited **after 1996**.'

**Hence**, contrary to the District Attorney **Susan Hawk**'s argument: ...'The instant 11.07 writ is specific to arising issues out of #F10-712728(his 2013 10 year conviction) which was **heard before this court**>''''

**Thus**, the above quoted DMS 1996 statue - and its' every component- resides within **"jurisdiction"** of the said court - and **must** be acknowledged and heard! The **DMS** policy strictly states'..''it **applies** only to inmates **after 1996**; which **"preclude"** it from applying to the Applicants' 1989 case of *"jurisdiction"*.

**Ex post facto :**

The District Attorney, Susan Hawk conceded to the fact that the Petitioners' "ex post facto" rights has indeed been violated by the Board of Pardons and Paroles **via** "incorrectly applying the current amended Sept 1, 1996 statutory rule" **retroactively to** his 2013-19 year burglary sentence; thus the Parole further **erred** by denying him the statutory **"automatic"** release upon its Mandatory Supervision date 8/8/2015 - a blatant "ex post facto" violation; thus subjecting the Petitioner to a **prolonger** imprisonment; certainly placing him at a grave **disadvantage** - thus having to endure such day-by-day increased term **deprived** of his freedom - than would have otherwise occurred had the Parole Board simply **complied** to its statutory mandates; as a direct result of the more severe punishment the Petioner is having to endure. Yet, to add **insult** to **injury**; now comes the "Justice of the Peace" to close a blind eye to such **cruelities** under the provincial of "jurisdiction" is essentially just as cruel and unusual of a humiliating punishment being propounded than the likes of that which the Petitioner is having to endure from the **axis** of TDCJ and the Parole Board.

> ..."Indeed, courts have repeatly held that "parole eligibility is part of the law **annexed** to the crime at the time of a persons' offense." see Schwart v. Muncy 834 F.2d 396, 398; also Burnside v. White, 760 F.2d 217, 220.

Again, The Petitioner, admittingly, pursuing such challenge against the Board of Paroles, a quite formidable entity, as an **amateur** without the remoteness of legal assistance; and whose knowledge of "jurisdiction" protocol is rather **skimpy**; hereby implore the Honorable court to deem the herein **"rebuttal"**, liberally. For the District Attorney made its contraints to note:

> .."Applicant is procedurally precluded from raising issues pertaining to a previous current conviction #F89-74322."

**Ex post facto Cont:**

>  .."Statutes enacted or amended after prisoner was sentenced **cannot**
> be applied to alter conditions of or **revoke** those of his pre-
> existing parole eligibility; notwithstanding that conduct purportedly
> triggering application of statute occurred after its enactment."
> U.S.C.A. Const. Art.1; 10, c1.

Thus, the subsisting **irony** lies in the fact that - although the Petitioner has been deemed "procedurally prohibited" from raising the primary issue herein pertaining to the **unlawful** act that the Parole Board is **guilty** of "retroactively" applying to the Petitioner's previous 1989 30 year sentence - running concurrent with his persent 2013 10 year sentence; the former of which collides, thus creating a **dichotomy** from which the Parole Board is extended free reigns - in spite of the law - to manipulate and monopolize at the behest of infringing upon an offenders' liberty interest rights. The essence of "procedural error" stems from such improper applications of **"policy"** adherence - thus brought before the Courts only to be neglected and **dismissed** upon the feeble grounds of **"jurisdiction"**.

As in the case citing of Wilson, 526 U.S. 119 S. Ct at 1693:

>  .."Supreme Court ruled that a district court must first evaluate
> the merits of a plaintiffs claim to determine if his Constitutional
> rights are violated, before it proceeds to determine whether the
> violated right was **"clearly"** established at the time of incident."

Constitutional government means that when a **judge** is called upon to decide the case of **John Doe v. U.S.**, he is not automatically to assume to take side of the govern ment. **fairness** to John Poe seems to require that the judge assure him his rights under the law, regardless of what govrnment officials may deem expedient for the public.

How **shocking**, to stand before a Justice of the Peace, who pronounce .."Yes, Mr. Jennings, you may have presented a valid claim about your liberty interest rights, but we are not going to honor it, because it would be politically or otherwise awkward to do so."..Due to some procedural jurisdictioal technicality, the courts has similarly turned a blind eye to the Petitioners' herein legitimate **ex post facto** claim.

..."**Ex post facto** policy, although partly discretionary, is still subject to ex post facto analysis when there are sufficently discrenable criteria to suggest that **new** retroactive policies are being applied **against** offender's liberty interest." U.S.C. C. Art/1;9 cl.3, 10. C 1.

The **gist** of the concurring situation involves the **arbitrary** matter in which the Board of Paroles has shown to **flectuate** from one extreme of the Petitioners' two separate, yet, concurrent sen - tences, thus putting the Petitioner at a grave **disadvantage** by the sheer act of **retroactively** - toying with the rudiments entail in each opposing statute; as if to imply merely a "**partial**" theme of discretion is thus being applied into the DMS scheme.

..."The **ex post facto** clause flatly prohibits retroactive penal legislation." Lynce v. Mathis 117 S. Ct. 891.

The District Attorney, Susan Hawk, despite of the ensuing **ramifi - cation** of the Parole Boards' explicit "**Plain error**" trampling upon the Petitioner's constitutionally protected liberty interest rights, emits the slightest allowance other than to **hasten** with its **dismissal** of the Petitioner's every 11.07.writ claim. Under the "**current sen - tencing**" doctrine, meaning that existence of **one** valid conviction may make unnecessary review of other convictions when current sentence have been given.

**Concurrent Sentence Doctrine:**

The existence of only **one** valid conviction makes unnecessary review of other convictions which run "**concurrently**" with valid conviction. U.S. v. Stovall, 825, F. 2d 817; opinion amended 833 F. 2d 526 Crim.law 1177.

"Sentence **is not** "concurrent" where **mandatory** special assessments are separately imposed on each conviction." U.S. Berry, 977 F.2d 915.

Moreover, the word "**concurrent**" means running together, "cooperating", contributing to the same event - acting in conjunction, agreeing in the same context - co-operating, accompying." East Tex Fir Ins. Co. v. Blum 13. S.W. 572, 76.

Any law is **ex post facto** which inflicts greater punishment than the law **annexed** to the crime when committed, or which alters the situation of the accused to his disadvantage. U.S.C.A. Const. art. 1. 9. cl. 3. and @10; Vernons' Ann. St. Const. an. 1, 16 - Ex parte Alegria, 464 S.W. 2d 868. - Const. law 197.

Hence, it is constitutionally **unfeasible** to squash or preclude the statutory amenities annexed to the Petitioners' 1989 30 year sentence - to be super- imposed by the **adversed** rudiments of his **concurrent** 2013 10 year sentence; an unlawful (15of-33)act that's **incumbent** upon both - the former and the latter statute.

## Applicant is Procedurally Precluded From Raising Issues
### Pretaining to #F89-74322 ( 1989 30yr. concurrent case)
The District Attorney

"The retuen and all suggestions made by the Court against the Applicants **11.07 writ** may be **amended** by leave of court, <u>before</u> or <u>after</u> being filed."

"**Newly** discovered evidence that, if prove and viewed in light of the evidence as a whole, would be sufficient to establish by **clear** and thus convincing evidence that **no** reasonable fact-finder would have found the movant party guilty or in **error** of the offense or by some **retroactive** means."

**Furthermore:**

.."To **escape dismissal** a plaintiff need **not** set out in details the faats upon which a claim is based, but must allege suffic - ient facts to **outline** the cause of the action." see Marmon Group, Inc. v. Resnord Inc. 822 F2 31, 34.

On behalf of the District Attorney's state response to Applicants' 11.07 writ of habeas corpus - upon grounds of its denial and **dismissal** due to "procedural jurisdiction prohibittion that precludes the App - licant from raising issues pertaining to his **concurrently** ran sentence- #F89-74322 30 years UUMV conviction; with that of his **conjoining** sentence - #10-712778 of 2013 10 year burglary conviction - to which the instant 11.07 do addresses .

Thus, due to the uderlying **facts** herein presented to establish **clear** convincing and sufficient evidence that - for Constitutional **error**, no reasonable fact-finding insight would have otherwise reached such a conclusion of **dismissal** of the Applicant's claim - hence, does the Petitioner hereby **request** a Preliminary injunction intercede as a **referendum** bases on the case citing of **Ex parte Woodward**, 619 S.W. 2d 179; Ex parte Campbells, 565 S.W. 952 - whose situation is **analogous** to that of the Petitioner's "jurisdiction" predicament; in faith that the Honorable court will proceed its due process with writ of Mandamus if so suggest otherwise.

Also:

.."Where prisnoner was currently incarcerATED IN TDCJ in the Southern District of Texas and where he had been convicted in th Northern District of Texas, **jurisdiction** under Federal habeas corpus statute was **appropriate** in either district. see U.S.C.A @2241(d) King v. Lynaugh, 729 F. Supp. 57

The Court of Criminal Appeals and each judge therefore shall have final appellate and review **jurisdiction** in cases co-excessive with the limits of the state, and its determination shall be final. Such ordinances is not a matter of right, but of sound **judicial discretion** enacted by Act 1965, 59 Lg. ch.722(5b).

## Ex Post Facto Credible Defense
### against procedural jurisdiction
### Prohibition:

The Petitioner shall rely upon the csae citing in Waldschmidt vs. Amoco Oil Co. 924 F. Supp; as to lend credence in sustaining the **"recovery"** of his "ex post facto" claim from the fate of a dismissal; thus, substantiating the motive of **"foul play"**.

> ..."Complaint must contain either direct or **inferential** allegations respecting all material elements necessary to sustain **recovery** under some viable legal theory." Waldschmidt vs. Amoco Oil Co. 924 F. Supp 88.

In accordance to Federal Civil Judicial Procedure and Rules; p.1086, Sec. 2243 Issuance of writ; return; hearing; decision: **Hence, the newly discovered evidence** that solicit "foul-play" ensuing the **due process** phase of the Petitioner's 11.07 writ of habeas corpus **initially** met its **rendezvous** fate at 133 North Riverfront Blvd LB 12-Dallas, Texas, County District Clerk - the court of conviction to whom the Petitioner, **via** TDCJ Estes Unit Law Library Indigent Postal; **certified** notary, TDCJ Law Librarian official, **Ms Scott;** on "Sept 8," 2015, did solmnly mailed such writ.

As truth herein unfolds - the shrews act in which the **"Courts"** has sought to be so **bold** and uphold - its' **obstruction of justice** - will be shown as being an even more **severe** violation of the Petitioners' Constitutionally protected **due process** rights - than the likes of what his 11.07 writ cliam to blame against the Board of Parole.

On "Oct 8," 2015, the Petitioner's 11.07 writ was returned **via** addressed P.O.Box 12308, Capitol Station - Austin, Tx; from the Court of Criminal Appeals - **"unprocessed"**; by Clerk **Abel Acosta;** alleging that such 11.07 writ did not comply - and must be sent to District Clerk of conviction. **Ludicrous!**

The **irony** - how did the Petitioner 11.07 writ wound-up in such far off **jurisdiction** of "Austin, Tx"; since said writ was not in **"compliance"**, who would forward it to a "higher Court" - **unprocessed?** As opposed to simply returning the defective 11.07 writ back to its original sender?

How **bizarre**, the exact same Dallas County District Clerk-court of conviction has been caught in the act of **foul-play** by the sheer fact of a procedural **"jurisdiction"** prohibition committed by having forwarded the Petitioner's **Unprocessed 11.07 writ** to Austin Tx;and thus, **dismissed** his writ on similar procedural jurisdiction prohibited grounds. **Absurd!**

# Foul-play of 11.07 writ by the Court

Cont:

On Sept 8, 2015, Applicant, Gary Don Jennings, according to Art.11.07 Sec.3 - of the Code of Criminal Procedure, on proper form, with attached 19 page Memorandum of law in support of legitimate claims against the Board of Paroles, did address and maied such writ to the Dallas County District Clerk - the court of conviction; only to have had such 11.07 writ "returned" approximaely 30 days later, 'unprocessed'.

To the Applicants' utter dismay, the Dallas County District Clerk, whose duty bound to statutorly render "due process of law", reneged, and obviously, rescinded from the ethical responsiblity to either, honor the Applicant' 11.07 writ via due process; or otherwise return such sol lemn legal document back to its original "sender", the Applicant. Instead, the Dallas County District Clerk - under the pretense that 11.07 writ did not comply - did erred by forwarding such writ of habeas corpus - "unprocessed' - to an inappropriate "jurisdiction"; Austin, Tx - to the Court of Criminal Appeals; as its clerk, Abel Acosta, enclosed, a notification alleging that the Applicants' 11.07 writ did not comply; that it must be sent to (Dallas County District Clerk of conviction) thus, unprocessed.

The Dallas County District Clerks' ignoble attempt to extricate themselves as the sole culprit, is clearly futile - as their exposure is quite apparent by the sheer fact of the existing proof that the writ was definitely addressed and certified notary sent to them. A blatant act of "obstruction of justice".

By the arbitration provision of filing, and the legal document process, any writ or legal form required or permitted to be presented to the Court or to a Judge shall be filed with the District Clerk. If submitted by an inmate confined in an institution, a document is timely filed if it is deposited through the Prison Unit internal mail system - and is accompanied by a notorized statement or declaration in compliance with 28 U.S. 1746 - setting out the date of deposite and indicating that first class postage has been paid.

And more often than not, it is known that the DA, not the Court or the judge, is who wounds up with access of writs, court logs and docket even before the Grand Jury gets hold of them. In State and Federal cases, its the prosecuting District Attorney (DA) that always present the indictment under the wrong statute. With such amazing facts in mind, it doesn't take any stretch of the imagination to conclude how the Applicants' writ got shipped to Austin Tx. "unprocessed."

## To Vindicate Habeas Writ Claim
### From Dismissal

As a matter of public policy, any act that **hinders** or usurp the legal operation of the **judicial system** or its legal proceeding - must be resisted or punished by the Courts themselves; the judicial system could **not** long continue to maintain **respect** and demand obedience unless they controlled such conduct that's remotely tended to **obstruct** or corrupt the administration of justice.

By sheer virtue of the Applicant's 11.07 writ having wound-up in the hands of, Clerk, **Abel Acosta** of the Court of Crimnial Appeals - far-away in a totally inappropriate "**jurisdiction**", Austin Texas - than from where it was expressly addressed and mailed to - Dallas County Clerk; is quite **bizarre** in and of itself; a stark act of defective process of law in the lease; yet, a blatant act of "**obstructing justice**" at worst.

Notwithholding the fact that upon receipt of Applicants' **unprocessed** returned 11.07 writ; however **foul** were the pretenses for its **rejection**, the enclosed 'notification alleged that such wasn't in compliance by not being sent "to the Disrtict Clerk of conviction" - whereas, the Applicant did subject his 11.07 writ to thorough analysis, insofar as referred its' entire content to close **scrutiny** - and finding no rendition of possible default, nor the faintes probability of incorrect addressee; as a matter of fact, the MTC/TDCJ Estes Unit Law Librarian official, **Ms.Scott**, had not only certified its **notary**, she made contact **via** "phone", to the Dallas County - Clerk - the court of conviction; inquiring about the status of the App - licants' 11.07 writ and was told that the Court had already pre-maturely **denied it**. Show-nough, upon having **re-submitted** the exact same **writ-Oct-19**; addressed to the same place - Behold! no longer than a week - Nov 2,2015 a notice did arrive, the Dallas County District Clerk **Felicia Pitre**, informing the Applicant that his 11.07 writ is being thus, **processed**.

A definitely admission that clearly attest to the fact in the **validity** of Applicants' 11.07 writ having satisfactorily been in **compliance** from the start! **Yet**; within only **five** days later the Applicant received the **pre - mature dismissal** of said 11.07 writ.

In the final analysis, it would be wholly inappropriate that no action go against such manifest **error of** the "courts'" **obstruction of justice**"; thus, having subjected the Applicant to "**jump**" though a superfluity of hoops in pursuit of exhausting his U.S. Constitutional **rights** to present a legitimate and sound complaint against such "**due process**", ex post facto, and cruel unusual punishment - only to have had **reeked** upon him a double dose of the same **malaise by** the "so-called "Justice of the Peace".

It's not so much as the Petitioner having **detoured** from raising a defense against specifically the "**dismissal**" of his ex post facto claim - than has been the Petitioner's **aim** to draw a parallel **analogy** of his existing restraints of "procedurally 11.07 writ jurisdiction prohibition" - imposed by the District Attorneys' response that emitted such dismissal; however, **paired** with the astute act of a "**jurisdiction**" violation that stems from the judicial **clergy** themselves —of which may be much more challenging as to sat a **precedence** in case law over the issue at hand. Thus, embarking upon the "newly discovered evidence" that the "legal **writ** document" protocol extends to litigants. Surely "no reasonable fact-finder" would have stumbled upon such valid **incriminating** evidence against the judiciary "**movant**" party themselves.

Legal challenges to administrators' action or obtuse decisions **ought**, in principle, be conducted like any other sort of impartial litigation. **Law,** in essence is associated with fixed rules to "protect" people from unwanted **intrusion** - including the intrusions of government officials . Administrative law, thus suggest that administrative officials be allowed to operate with a more managerial or policy-oriented notion of law. In traditional view, however, the rule of law is thusly understood as an element that **guarantees** that administrators themselves would be held accountable to the **same** legal process as private citizens.

"An appellate court review a Trial court's decision concerning a **preadjudication** habeas corpus application in the light most favorabl to the Trial courts' ruling; and must uphold that ruling **absent** an abuse of discretion. Vernons" Ann. Tex. C.C.P. art 1108. Ex parte Simpson, 260 S.W.3d 172.

Thus, the influnece of Courts can never be measured simply by the apparent consequences of any particular case. For this reason administrative law seem to **parallel** many of the effects of the constitutional scheme in its normal operation and functioning.

To **escape dismissal** along either of the Petitioner's herein **claims**, it is strongly advisable that an explicit description, whether: Constitutional, statutorial, or jurisdictional or otherwise - is concise, but yet, **resilient** in such manner to **synthesize** the relevance as a whole. In short, the objective of the Petitioner's herein "**rebuttal**" is to substantiate such herein claims: **due process...ex post facto...cruel unusual punishment** - with a train of **Stare decisis;** the doctrine of precedent, under which a Court **must** follow earlier judicial decisions when the **same** points arise **again** in litigation.

## OBSTRUCTION OF JUSTICE
### (The Applicant' added claim)

The crux of the Petitioners' argument is that his application hath demonstrated the issuance of a perfect and legitimate 11.07 writ; wholly sufficient to establish an entitlement to the furtherance of "due process of law" - without having been subjected to the juggernauts of the judicial clergy.

Herein are the material facts - by commission did the Dallas County District Clerk, however anonymously, interacted with the said clerk, Abel Acosta, of the Court of Criminal Appeals in Austin Texas;both of who juggled the Applicants'. 11.07 writ like an acrobat - about the inappropriate jurisdiction of the "Capitol" of the Parole Board - at whom the Applicant 11,07 writ attack, And without the slightest inhabition did the same court dismiss the Applicants' 11.07 ex post facto complaint due to "jurisdiction" restraint from raising the main issue from his prior criminal conviction.

Hence, if there's any form of unethical "non-compliance" let the record show that the Courts' judicial system has been herein thusly exposed of committing the very acts that violates the Texas Criminal Procedure Code. What a sight to behold!

Howbeit, the clerk, Abel Acosta, of the Court of Criminal Appeals, by far can't be absorbed of culpability, however, whether by "omission" void of any suspicion, acted as the recipient, and respondent who, knowledgable of the desecrated 11.07 writ made by the former District Clerk of Dallas, yet, contrived the burden to further violate the sanctity of "due process of law" by forwarding such 'unprocessed' 11.07 writ back to the Applicant (also Petitioner) under the pretenses herein emphasized.

Despite of the fact that the re-submitted 11.07 writ did obtain finally the "due process of law warranted, yet it does not preclude or invalidate the important fact that a most cruel miscarriage of justice hath been ensued - which further, in all likelihood, imbued the final process that resulted from the "pre-mature" dismissal of the Petitioner's application for Article 11.07 writ of habeas corpus.

However, in every **era** governments have sought to **skew** civil liberties by **illicit** dissent - inasmuch as the penal system has been **marred** by administrive officials **tyranny** - whose abusive and **cruel** acts are being unilaterally imposed and thus, succeeding to overshadow and **mute** the very voices of petitioners who are being **repelled** with injury.

As it was herein alluded to previously, 'administrative **law** doctrine tries to accommodate such realities by insisting that the role of the **courts** is not to direct public policy - but merely to guide and channel the essential discretion of administrators or to **ensure** that the exercised thereof is distributed **fair** and in a **proper** manner.

To "quote" one dissenting **judge**; "We are not required to "Strictly construe" the applicable statutory provisions -(or, as in this case, the jurisdiction irregularities), instead, we are required to "liberally" construe them according to the **fair** import of its term, to promote **justice** and effect the objective of State statutory **code**." see V.A.C.C.P. Stine **vs.** Stae, 908 S.W. 2d 429, 435.

The purpose of the Article **11.07 writ** of habeas corpus, simply put, is to obtain a speedy adjudication of a persons' right to liberation from illegal restraint'. Ex parte Ramzy, 424 S.W. 2d 220 - Hab Corp 207. Furthermore, A **writ** employed to bring a person before a court, **must** frequently is to **ensure** that the persons imprisonment or detention is not illegal - its essence is of immemorial antiquity.

The Applicant or the person detained may, under oath, **deny** any of the alleged facts set forth by the District Attorney (DA) in the return "state's response to Applicants' 11.07 writ" - or any other material facts .

The Court shall **summarily** hear and determine the facts, and dispose of the matter as law and **justice** require. **newly discovered evidence,** ( as the "jurisdiction **foul-play** herein bring forth) as a whole, would be sufficient as to establish that no reasonable **fact-finding** would have found the Petitioner, **Gary Don Jennings**, herein, legitimate 11.07 writ **"due process"** and **"ex post facto"** claims no more worthy of **dismissal** than the substantiating fact of such **"cruel and Unusual punishment"** is attacks by the **juggernuats** of the judiciary clergy are permissible.

Criminal law, in essence, is a "stablilization of politicial, social - policy - its objective is to guide and to regulate the conduct of individuals in relation with other people - it is an instrument of social - control. General legal principle is the **maxim** that judges, lawyers, and the administrative officials apply in the criminal **code** of procedures as a method of following standardlized protocol; such as the exhausting of the proper "due process" as means of gaining or refraining access of the Courts. Prisoners challenging the Parole Board, or such agencies, is required to exhaust such remedies on a admininstrative level; similar are there are different levels that one must proceed - due to "jurisdiction" or venue.

**Juridiction**, in its narrow sense, is something possessed by courts, not by judges (who are merely officers of court, like lawyers, bailiff, and court-reporters), it encompasses only **power** of tribunal over subject matter and person. see Vernons' Ann. Tex. Const. art. 5, 1, 8; Davis v. State 952, S.W. 555.

Reports of judicial decisions are among the most **important** sources of legal authority in the criminal law system, Over the course of time, judges shape legal doctrines to address the **complex** issues of our changing society. Legislative enactments cover even broader range of issues, but even a statute that appears straight-forward must be read in light of the court decisions that construe and apply its provision.

As alluded to previously, the term **"stare decisis"**, the core element of the Common law; from whence, the Petitioner's sole objective is herein duty bound to substantiate his **argument**; the "case-book" effect, entails that the majority rule - based on such legal principles presenting a case as having **precedence** upon which prior court rulings were established in favor of the lititgant's facts, evidence, and relevance to the challenge. Such method of case precedence provide guidance to courts faced with novel or even similar issues, and aid in preventing disputes.

As judges look for order, **symmetry**, continuity, and precedent, are factors that guard against "arbitrary discretion", ambiguity, and a twisting of the fact. Thus, it is the Petioners' ambitious intention to present before the Court, the **Truth**, and nothing but the "truth".

(23-of-33)

**Litigation** usually begins in a trial court, the lowest level of the hierachy; consequently, exactly where the Petitioner herein, did forward his **11.07 writ**, addressed to the Dallas County District Clerk, court of said conviction. The legal process of resolving a **dispute**, the process of judicially deciding a case is termed "adjudication. Even in these days and times, where we care strongly about **"rights,"** there are those who are anxious to draw a line sharply between adjudication vs. administration.

In light of the impending **doom that** the Petition has been reckoning the **fate** of sure **gloom**, its small wounder why a great majority harbor such sentiments. Criminal negligent acts, compounded with that of **obstructing justice** by the nefarious intrusion of the "Courts", resulting in the Petitioners' application for **writ of habeas corpus** being inordinately returned **"unprocessed"** - under some presumptuous rule of such writ failed to comply with the 11.07 writ protocol; while in fact, overwhelming evidence confirms otherwise. The eventful proceeding of jurisprudence **inevitably** disappears into a strangely disembodied struggled between the ghost of the litigants' rights and the **specter** of administrative officials'menacing apprehension.

Despite the resonance of **obstructing justice** emananting from the **irresponsible** judicial entities herein specified - whose shrewd attempt to mitigate the ramification of their **conspiratory** exploits; given these **viable** precepts, however, **prudence** will dictate, that by **virtue** of sheer esteem along these legal proceedings, the **lawful synopsis** that substantiates the Petitioner's herein validity of **truth** shall prevail over the **atrocity** of ailing **rebuke** and thus, expose the *hypocracy and hypocricy* - administrators' pursuit, and *vindicate and* Petitioner from the thorn of the Parole Boards' manipulating **bureaucracy.**

The proper leading **judiciary authorities:** The Attorney General, **NAACP,** the U.S. Dept.of Justice Civil Rights Div.; the Federal Bureau of Prison, Maoist Int. Min., the National Media, and the State Comm. on Judicial Conduct; all such Departments of "justice", Organization, Corporates, and such related entities shall concede and, insofar be compelled to render the **notification letter** received from **Abel Acosta**, clerk of the Court of Criminal Appeals, sufficient enough **evidence** - as an accessory to the fact; hence, "obstruction of Justice"

shall reign their **own** destruction!

## APPLICABILITY OF ADMINISTRATIVE REMEDIES:

"The court shallm on its own motion or on the motion of a party **dismiss** any action brought with respect to prison conditions under Sec. 1983 of this title; similar is reliance upon the **due process of law** clause:'Neither habeas nor civil rights relief can be absent of the allegation by a plaintiff that he or she has been **deprived of** some right secured to him or her by the United States Constitution or those of statutory legislative laws of the state. see Hilliard v. Board of Paroles, 759 F. 2d 1190 (5 Cir. 1985).

To the extent that the Petitioner, Gary Don Jennings, herein seeks **relief** regarding alleged **due process**/ex post facto/and cruel unusual punishment - violations resulting from the Texas Board of Paroles' review process - the District Attorney, Susan Hawk **inordinately dismissed** the Petitioners' **due process** claim on an astute practicality that **argued** to the effect that the Petitioner, more or less, **forfeited** his entitlement to such "30 days advance timely notice" by virtue in an "absent" of a complaint about the lack of any availability thereof; for which the Petitioner's **rebuttal** - asserts that such a "statutory entitlement, by law, to provide a recipient whose eligible for parole a 30 **day notice** is not dependant upon the recipients' utilization **via** a submitted quest".

The **District Attorney**, Susa Hawk's "states' response to Applicants' **writt:**

.."Applicants' **controlling** case for his eligibility was his instant case as he claims(due process violation); Applicant has not demonstrated any prej - udice or harm from any **untimely** notice".

Hence, irregardless as to whether Applicant was "prejudiced" against or not, nor does the Statutory entitlement of a "30 days advance notice" dependant on whether any "harm" is done; the Parole Board is "Plainly in error" by the sure fact that such DMS notice was not issued along the Supreme Courts' mandated prescribed "30 days". Period!

The **Supreme Court** of the United States stands at the head of the judicial brance of government, and provides the **definittive** interpretation of the U.S. Constitution and Federal statutes. In reliance upon such 'Supreme authority', the Petitioner's **11.07 writ** application due process ought to be **granted** the **relief** it seeks.

The **District Attorney**, Susan Hawk's "dismissal" of Applicants' second claim - **ex post facto** was attack by..."Applicant is procedurally precluded from raising issues peetaining to his 1989 30year conviction to which the **ex post facto** violation is "retroactively" applied, as oppose to the instant 2013 10 year case that his 11.07 writ is filed is Erroneous. (25 of 33 )

## Ground #3    CRUEL AND UNUSUAL PUNISHMENT

The District Attory, Susan Hawk's overall conclusive argument

for denial of Petitioners' third claim, 'cruel and unusual punishment

is based on the precepts:

..."The Board's decision to deny Applicant release was not Cruel and Unusual;
there is no evidence supporting such claim, third ground for relief is denied."

While, in fact, the Petitioner's 11.07 writ - attached a 19 page
Memorandum of law in support of the Petitioner's claims, which had
adamantly asserted that 'between the atrocity of enduring a due -
process violation, and the hypocricy inflicting an ex post facto
infringement - thus, an abuse of arbitrary discretion having ensued,
however, only servering to exacerbate the insufferable train of
oppressive authority being disproportionally misused, thus pivots
such extreme "cruel and unusual punishment".

### Cruel and Unusual Punishment:

Punsihment that is tortuous, degrading, inhumane, grossly disprop-
ortionate to the crime in question, or otherwise, shocking to the mores
sense of conscience. Cruel and unusual punishment is prohibited by the
Eight Amendment.

The Petitioner contest the "cruel" antics of the Parole Board's
manipulating and monopolizing the statutory amended Sept 1,1996 HB 1433
that governs the "Discretionary Mandatory Supervision" statute. As it
has herein been undisputably shown to prevail throughout the Texas
Prison industry. The ramification from which stems such disparity of
cruel abuse of administrative authority would take volumes to list only
a small fraction of its' many application being thus, inflicted under
guises of "rules" and "policy". For starters, due to such foul  impos-
ition of having one's ""due process" rights resolutely trampled upon as
some 3 class citizen from Syian, yet at another extreme having had the
revised Sept 1, 1996 DMS statute unlawfully imposed to retroactively
santch away my statutorily mandated "automatic" Mandatory Supervision
release date - 8/8/2015; only to be extricated, expunged, and attached
at the end of my maximum discharge date 7/23/2021; essentially placed in the
aggravated 3-g category, at no fault of my own; A modle inmate status in vain.

# OVERVIEW

## CRUEL AND UNUSUAL PUNISHMENT:

.."Sentencing lacking any legitimate penological justification is by its nature disproportionate to the offender's offense constitutes 'cruel and unusual punishment." U.S.C.A. Const. Amend 8.

Hence, Petititoner, who has a **non-violent** offese and has served over 100% of his sentence while in full **compliance** with institutional ruels; **void** of any disciplinary infractions; participant and completion of TDCJ **ITP** and **Re-Entry** Programmic requirements; recent registered as TDCJ 'Peer Educator/Wall Talk tutor - all, an accurate reflection of his ongoing state of rehabilitation which **qualifies** him for MS release - without the least of an imposing threat to society; **Yet**, denied release to his 'automatic' date 8/8/2015; **Absurd!**

..."Such unfettered discretion shown by denial of Mandatory Supervision as prerequisite of the 77[th]Legislative HB 1469 - does raise entitltment and thus ' does creat 'liberty interest' subject to due process analysis." U.S.C.A.5. 14.

The Petitfioner raise what he perceive to be **'abuse of discretion'**; that is subjecting him to further forms of 'cruel and unusual punishment; by the sheer constituents of the **amended** 74[th]Leg. HB 1433 DMS rule - whose application has explicitly herein **shown** to have literally treated his 'non-violent' burglary offense within the **3-g aggravated** category; such whose **not eligible** for release to MS. Petitioner has **not** been previously convicted of any listed serious offenses that would be a predecessor to enumerated offenses that may current make him 'uneligible' for MS release. Ex parte Ervin 187 S.W. 3d 386.

**Abuse of discretion** - an adjudicator's failure to exercise sound, reasonable, and legal decision-making. An Appellate court's standard of reviewing a decision that is asserted to be **grossly** unsound, unrealistic, illegal, unsupported by the evidence present." see Discretion(4) Appeal and Error 946; Federal Court.

**Abuse of process** - The improper and tortious use of a legitimately issued court process to obtain a result that is either unlawful or beyond the process in scope." Also termed, abuse of legal process.

The Petitioner has **yet** drawn forth the **decimated** attempt of the responsible 'judiciary Court clergy' to render the Petitioner's legitimate 11.07 **writ** ineffective through their maze of error and acts of 'obstructing justice'. **Black's Law** -"**obstruction of justice**"; interference of any kind with the law ful service or execution of **writ**, warrant, or other such lawful processes - thus, and subjected to **prosecutorial** and punitive reimbursement."

**Cruel Unusual Punishment:**

In determining whether a particular punishment is 'cruel and unusual', the courts must look beyond historical conception to the evolving standards of **decency** that mark the progress of a maturing society; the stardard of extreme cruelty is not merely descriptive but necessarily embodies a moral judgement, and while the standard itself remains the same, **its** applicability **must** change as the basic morals of society change. see U.S.C.A. Const. Amend. 8; Meadox v. State, 325 S.W. 3d 189.

The Petitioner maintain his stance toward the State District Attorney, Suan Hawk's "underhanded" antics of belitteling the **truth**, as well as to misappropriate **facts**. To assert that the Applicant's **claim** of 'cruel and unusual punishment' is without any supporting evidence, while the Petitioner's **11.07 writ** application was replete with an **abundance** of such supporting "evidence" along the 19 page Memorandum of law. How could a **"clergy"** of law be so **cruel** and deliberately **ignor** the validity of such astounding facts. The Petitioner is **petulantly** besieged by the clamor of judicial **rhetoric** that refuse to warrant the Petitioner's **writ** the sensible fortitude it so deserves; as opposed to moral trupitude of humiliation and degradation.

The State District Attorney's argument:

.."in other words, a prisoner is not **guaranteed** release on parole."
Hence, what more closer of a word in the engligh vernacular **can** be more **synonymous with** "guarantee release" than that of, **"automatic release"**; as that of which the 77th legislature HB 1469 statute thusly entitles the Petitioner's **1989** 30 year UUMV conviction that **"govern"** his parole eligibility - yet, to be unceremoniously snatched, discarded, and **"toyed"** with as a play-thing in the **tyrannical** hands of the Parole Board.

.."Facially permissable forms of punishment of inmates may, through **continual** use, inflict 'cruel and unusual punishment." U.S.C.A. CONST. Cooper v. Sheriff, Lubbock County, Tex,, 929 F2 1078.

Hence, it doesn't take any stretch of the immagination to preceive the **"pattern"** of arbitrary and **caprious** train of 'cruel and unusual acts of punishment that has become typical and **"facially permissable"** - under the guises of rules and policies; sinice the Petitioner's inception into TDCJ: 'forfeiture of street-time credit, followed by a **multiple** Set-Offs; then a **'withdrawal'** of one Set-Off, only to be issued a **Serve-All;** which proceeded an **unlawful DMS notice...**then denied Parole.

(27-of-33)

Equal protection claims, in federal civil right action, can be pursued and presented by inmates - in which they allege that without justification they are treated **unfair** compared to other inmates sanctioned to unparalleled sentencing guidelins." U.S.C. Const. Amend 14, 12. U.S. A 1983

No primer of an example of such **'cruel and unusual** shrewd antics of this can be seen than in the enactment of the **amended** Sept 1, 1996 74th Legislative House Bill 1433 that govern the 'Discretionary Mandatory Supervision' statute. Which is, beyond a matter of opinion, a blatant **travesty of justice**, a mockery of 'due process', and a mere **joke!** for many who harbor an expecancy of being released on such DMS provision any time **shy** of their long way maximum discharge **'day-for-day'** date; its' a marginal oriented notion of law and policy.

**Hence,** 'Equal protection' clause requires no more than that a person under particular sentencing guiglines be treated according to its' statutory rule, and *not* indiscriminately **shuffled** about like a "play-thing" in either extreme. If challenged, government action does classify or distingush between two or more groups; however, action does not violate 'equal' protection, it requires **equal law**; not equal results. Precisely, the equivalence of the **3-g aggravated -DMS** policy ought not be imposed upom the Petitioner's 'non-violent' past or current offense by the Parole Board nor by TDCJ.

## Abuse of Discretion Law:

Agency 'abuse of discrtion' means that, in making decisions, agency has either omitted from its consideration factors that legislature intended agency to consider in circumstances, included its initial consideration of such factors of irrelevant import; or however, reached completely unreasonable result after weighing only assumable relevant factors. see Statewide Convoy Tran. **vs.** Railroad, 753 S.W. 2d 800.

The premise of such endeavor is that the Constitution has implied distinct limits on legislative discretion, limits clear enough for Courts to discern so that such legislative (bureacrates) would enact legitimate 'laws' rather than merely applying its 'own' form of bureaucratic **spin** - or narrow-minded agenda of one's own self-centeredness. The initial problem is not so much as selfishness **than,** 'self-conceit', which makes one's discretion awful opinionated or fiercely **dogmatic** in perspective.

# OVERALL SYNOPSIS
## Of 11.07 Writ

When, in the course of incarcerated events, it becomes necessary for an offender to petition the the hands of servitude that resides in the unequal yoke of his captors; and declare his claim of statutory 'liberty interst' - with legitimate expectations of fair treatment and 'parole'; thus, guaranteed under the United States Constitution.

Freedom to petition government, expressly the administration of the Board of Pardons and Paroles, for redress of grievances, means the right to bring such problems and concerns to the attention of elected and appointed judicial officials - in an honest pursuit to have them rectified or corrected.

A very significant part of judicial regulatory adminstration has made a huge affect in the Texas Correctional system. The compilation or collection of statutory legislative ordinances being the equvalent of the 'State Criminal Code of Procedure', my general synopsis can be narrowed down to the challenge of the 74th Legislative HB-1432, the 'Discretionary Mandatory Supervision' statute. Not over the annals of legislative history has such a House Bill had a profound impact upon the detriment of the incarcerated offenders; who, by default, will turn out to despise the operation of the judicial/penal system far greater upon their eventual release - than their initial imprisonment.

Prudence, indeed will dictate that government long establish is not to be changed on behalf of light and transient means; inasmuch as a criminal, by virtue, owes a debt to society', and detention is jusifiable; yet, 'tumult and oppression is worst than slaughter'.

The United States Supreme Court requires inmates to exhaust such administrative review before entering the arena of judicial review. However, this process become unfairly difficult when - as herein shown with the Petitioner's 11.07 writ - such officials tamper with the 'due process' channels. State officials should understand and respect the reality that such acts of 'obstructing justice' in such a manner, is constitutionally protected and deliberate interfernce with its 'procedure' can result in civil or prosecutorial penalty. There shouldn't be any debate over issues that points out that administrators legal capacity are both, inevitable and essentail; yet, by a similar standard such officials ought to be critized for poor performance, and equally criminized for their wrong decisions that leads to severe repercussion.

" **The** law consists of the recorded '**rules**' that society will enforce and the procedures by which they are implemented. These rules and procedures are created in various ways, some by elected legislatures and others through judicial decisions. However, these rules shall govern the procedure in the justice, county, and district courts of the State of Texas in **all** actions of a civil nature, with such **exceptions** as may be hereinafter stated."

The Petitioner sole objective being to substantiate his argument along the realm of the "**case book**" method; in retrospect, as most effective in achieving the **relief** he seeks. However, may Providence see **fit** that references of many similar case laws lends much strenght and confidence in what's current - the State courts are not too **quick** to rule in favorable of such contents that may, not only sat a new **precedence**, but then the State will have to **acquit** the lot of thousands of convicts whose imprisonment is under the same statutory basis and thus, are being subjected to similar unlawful conflicts.

**Habeas corpus** may be issued only if prisoner whose release is sought within physically confined territorial limits of court which issue it. 'Shepherd v. Beto, 227 F. Supp 806.

Though it is **incorrect** to suggest that authority of judge presiding over case has **no** bearing on valididty of proceeding, it is also incorrect to appeal of 'jurisdiction' of judge outside realm of jurisdiction of court in which he sits.   Davis v. State 956 S.W. 2d 555.

Technically, district judge does not 'transfer' authority to a preside over case to criminal law **magistrate**; rather judge acts through magistrate. Gov. Cod. 54.651.

Procedural irregularities in district court's order refering criminal case to criminal law magistrate was **not** jurisdictional **error** and did **not** render conviction **void**, and thus could not be first raised on appeal; error consisted of disrtct court judge's failure to sign order until two days after magistrate to defenant's plea. Vernons' Ann. Tex. Const. Art. 12: Gov. Code 54.651.

The issue of "**jurisdiction**" need not be viewed as some insurmountable factor when grasp with a resilience of 'insight'. Jurisdiction is generally understood to denote judicial power or authority. However, this term is often misapplied.   Art, V, Sec. 1, of the Tx Const. established jurisdiction.

The Petitioner ask the Honorable court to factor in the relevance of such leading 'jurisdiction' elements as they collaterally also applies to his similar situation - as **rebuttal** of the States' grounds to **dismiss.** see Ex parte Woodward,619 S.W. 2d 179/ Ex parte Campbell, 565 S.W. 942   (31 of 33)

SYNOPSIS cont:

Knowing when to condense your **REBUTTAL** into that final draft can be just as exhausting than having begun gathering legal research material. Such being the case, there comes the moment when it is rather necessary to **synthesize** the reasearched information into a whole, however, such an attempt to condense the broad range of the 'judicial dynamics of penology' into a synopsis shall be the basis upon which my conclusive argument of rebuttal is to be ascertained.

The Petitioner hath **seized** as an argumentive advantage to administer both facets of the **"Plain error"** doctrine; the former requires that 'a minimum of clear or obviouse evidence of law were in place at time of trial under **"current law"** (such as the statutory allotted **30 days** advance timely notice **due process** scheme; or the applicable **ex post facto** clause; both of which stands out **"Plain"** as major **"errors"** made by the Parole Board).

The evidence presented by the Petitioner - 'copy of the **DMS** notice received on 4/16/2015, yet the minimum expired date 5/8/2015; hence, which **does not** allocate for an advanced '30 day notice' as stipulated by Statutory law.

And the Parole Board, as well as the District Attorney, Susan Hawk's argument of **"dismissal"**, is just as much of a 'Plain error'; seeing that the Applicants' **prior** 1989 conviction - toward which the Court has no jurisdiction - however, is an act after the fact of the **'ex post facto'** retroactive act. Although the amended Sept 1, **1996 DMS** statute was incorrectly applied to the Petitioner's 1989 30 year UUMV conviction - **yet**, its the **DMS** notice that explicitly lends reference to the Petitioner's 'current conviction' of 2013 - which coincides with the **DMS** notice:.."records show you have a conviction committed after 1996".. Therefore given the Court absolute **"jurisdiction"** of authority to grant the **relief** that the Petitioner seek.

**Moving right along...**

The latter facet of the **"Plain error"** clause is thus construed as the **absent** of any 'plain error' under **"current law"** - **if** - defendants' theory requires the extension of **precedent** (such in the herein 'jurisdiction **vs.** venue conflict. As the above rendition pointed out; the District Attorney, Susan Hawk has obviously **misconstrued** the resolute irregularity of the **ex post facto** introduction in the Petitioner's instant 2013 10 year burglary conviction - **annexed** to the **DMS** notice that specify its' relevance to a conviction committed after 1996; and surely this doesn't **"preclude"** the Petitioner from raising issues from that which is adamantly atteched to it; and which further authorize this Court full **"jurisdiction"**. However, such an instance may warrant the setting of a **"precedence"**; in accordance with the 'Plain error' clause. see Fed Rule Ct Troj 610 F. 3d 308 - Crim. Law.

(32 of 33 )

The Board of Pardons and Paroles panel members, residing as a bunch of appointed **renegades** who consider themslves **demigods**, has convened into a **bureaucracy** - a system so defined as a need to follow compelled procedures that **impedes** effective action; which ought not be take lightly, given the **havoc** they've reeked in and around the penal institutions that far outweigh what their vociferous demands and costly expenditures warrants.

It is found in: Orellana v. Kyle. 65 F 3d 29; "that if prisoners complaint alleges unconstitution, coupled with state law violation of the Parole Board having indirect or an inadvertent **impact** on whether prison eventually receives or denied parole, and both asserts claim under federal civil right statute, and seek writ of **habeas corpus**, the court should separate the claim and thus decide". Hence, the Petitioner Gary Jennings, hereby request.

Guaranteeing persons' liberties the right to petition, protect from abuse discretion, or from being excluded or denied due process and thus, being subject to discrimination under any program or activity receiving federal **financial** assistance, is the revelant provision of the U.S. Constitution.

In form, as the Petitioner herein emphasize, judicial obligation in cases invoking the higher law of the Constitution - arise when an individual asserts his rights against an entity that has violated his rights, the Board of Paroles; if the resolution of such case is of that which requires the court to analyze the validity or futility in a statute in question, and if the courts then judge the statute to be in conflict with the Constitution or those of statutory law, the court will deem that such statute be **rectified, if not ratified.**

**"Liberty interest"** along specified penal institutional lines entails those vested grounds of an inmates' accrued good conduct time is aligned with calender time, coupled with utter compliance to rules consisting as an accurate reflection of rehabilitation, thus, qualifying him release to Mandatory Supervision. Hence. Statutory librty interst guaranteed by law.

To translate in layman terms, 'Liberty interest' is sought as the prison time served being **equivalent** to that of an offenders' **wages**, his debt owe to society, or his **salary** in compensation for an allotment of time served, and thus, **pay-day**, entails being released to Mandatory Supervision. Yet, the enactment of the 74th Legialtive HB 1433 rule is an encroachment of that liberty interest, at best, an arbitrary 'discretion' to deny a prisoner his vested (wages) entitlement to MS release. Which is somewhat analogous to an employer suddenly decides not to pay his employee his pay-check for his timely task duly performed.

From this perspective, it shouldnt' at all be in conflict or even problematic for an individuals' litigation to demand that the court **check** the administrators from encroaching on his liberty interest when such encroachment curtails the provision of the U.S. Const - itution; as by some illicit authority under the guises of policy.

The judge presiding over such issues of 'policy', upholds a special institutional virtue - as a neutral **referee**, an umpire, able to read the law impartially - checking extreme abuse on the part of administrators and assuring some medicum of **fair play, and thus grant relief.** Dec. 8,15

Respectfully Submitted

Exhibit "B"

```
T. D. C. J.    -   I N S T I T U T I O N A L   D I V I S I O N
        DATE 10/16/14          RECORDS OFFICE              TIME 09:13:11
TDCJID: 01836900 NAME: JENNINGS,GARY DON              UNIT TRAVIS JAIL
SENT. BEGIN DATE 06/19/1989 TDC RECEIVE DATE 02/21/2013
INMATE STATUS STATE APPROVED TRUSTY CLASS III W     LAST PCR REQUEST 10/16/14


        SENT. OF RECORD       00030       YRS 00 MOS 00 DAYS    MAND SUPV PAROLE
        FLAT TIME SERVED         00023 YRS 02 MOS 24 DAYS    077  %    077  %
        GOOD TIME EARNED         00002 YRS 10 MOS 15 DAYS    009  %    009  %
        WORK TIME EARNED         00001 YRS 10 MOS 12 DAYS    006  %    006  %
        MAND SUPV TIME CREDITS  00027 YRS 11 MOS 21 DAYS    092  %
        PAROLE TIME CREDITS     00027 YRS 11 MOS 21 DAYS              092  %
        MINIMUM EXPIRATION DTE: 08/08/2015
        MAXIMUM EXPIRATION DTE: 07/23/2021


JAIL GOOD TIME RECD YES          NUMBER OF DETAINERS 00
GOOD TIME LOST 00000 DAYS        WORK TIME LOST 00000 DAYS
PAROLE STATUS   BPP DATE                    TDC CALC DATE 01/23/2012
```

REQUEST _____
CONDUCT RECORD:

TDCJID: 01836900 NAME: JENNINGS, GARY DON          UNIT HOLLIDAY
SENT. BEGIN DATE 09/25/2010 TDC RECEIVE DATE 02/21/2013
INMATE STATUS LINE CLASS I                    W .   LAST PCR REQUEST 02/25/13

        SENT. OF RECORD      00010    YRS 00 MOS 00 DAYS   MAND SUPV PAROLE
        FLAT TIME SERVED      00002   YRS 05 MOS 24 DAYS    024 %    024 %
        GOOD TIME EARNED      00001   YRS 07 MOS 25 DAYS    016 %    016 %
        WORK TIME EARNED      00001   YRS 02 MOS 27 DAYS    012 %    012 %
        MAND SUPV TIME CREDITS 00005  YRS 04 MOS 16 DAYS    052 %
        PAROLE TIME CREDITS   00005   YRS 04 MOS 16 DAYS             052 %
        MINIMUM EXPIRATION DTE: 05/08/2015
        MAXIMUM EXPIRATION DTE: 09/24/2020

.JAIL GOOD TIME RECD YES          NUMBER OF DETAINERS 00
 GOOD TIME LOST 00000 DAYS        WORK TIME LOST 00000 DAYS
 PAROLE STATUS   BPP DATE                    TDC CALC DATE 11/22/2011

---

**NOTE:** <u>In your specific case</u> you do not meet the highlighted criteria and therefore are <u>not eligible</u> to receive credit for your "street time". Therefore you are required to serve the remainder of your sentence without credit for any time that you served on the streets while on parole or mandatory supervision. The projected release and maximum expiration dates (short-way and long-way) are recomputed when you are reprocessed into the prison system. Not being eligible to receive credit for your "street time" does not mean the sentence has been illegally extended (or illegally stopped and started again). Also, it is not considered double jeopardy (even if you are ineligible due to a previous crime).